UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EUNICE PILETTE | CIVIL ACTION NO.: 6:17-cv-0162 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| UNITED MARINE OFFSHORE, LLC, ET AL. | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Currently pending before the Court is the plaintiff's motion to remand [Rec. Doc. 12]. The motion is opposed. The motion was referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court. For the reasons set forth below, the Court recommends that the motion be denied.

## BACKGROUND

The plaintiff Eunice Pilett was a tank cleaner employed by Francis Drilling Fluids, Ltd. His employer was hired by McMoran "to perform certain tank cleaning operations in connection with one of its Gulf of Mexico permanent production platform[s] located off the Louisiana coast, in an area commonly referred to as Ship Shoal 58-A."[1] According to his petition, he was aboard the L/B SUPERIOR RESULT

---

[1] Rec. Doc. 10-2, ¶ 2.

and was injured when it was hit by the M/V MISS ALLIE. At the time of the accident, the L/B SUPERIOR RESULT was alongside McMoRan's Ship Shoal 58-A platform.[2] The Court takes judicial notice that Ship Shoal block 58 is located on the outer continental shelf off the coast of Louisiana.

On November 13, 2017, the plaintiff filed suit in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana against United Marine Offshore, LLC (owner of the M/V MISS ALLIE), Warrior Energy Services Corporation, and Superior Energy Services, LLC (owners of the L/B SUPERIOR RESULT). The plaintiff's petition states that jurisdiction is based on the "General Maritime Law, as well as on the Savings to Suitors Clause, of the Judiciary Act of 1789 and 28 U.S.C. §1333."[3] The defendants timely removed the case citing 28 U.S.C. §1331 and the Outer Continental Shelf Lands Act, 43 U.S.C. 1331 et. seq. ("OCSLA"), as the basis for the court's original jurisdiction. The plaintiff filed a motion to remand contending that his petition does not state a cause of action under the OCSLA, his alleged injuries did not occur on an OCSLA situs, and there is no basis to remove a maritime claim brought under the savings to suitors clause.

---

[2] Rec. Doc. 10-2, ¶ 6.

[3] Rec. Doc. 1-2, p. 15.

## LAW AND ANALYSIS

### A. Legal Standard

A defendant's right to remove is strictly statutory in nature.[4] The general removal statute governing civil actions provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court ... for the district and division embracing the place where such action is pending.[5]

Pursuant to §1441(a), the propriety of removal is keyed to the original jurisdiction of the federal district courts[6], and consideration of a motion to remand a case removed from state court presents issues of subject matter jurisdiction and statutory construction.[7] The burden of establishing subject matter jurisdiction in federal court rests with the party seeking to invoke it.[8] Consequently, in a removed case the removing defendant bears the burden of establishing that federal jurisdiction

---

[4] See *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995).

[5] 28 U.S.C.A. § 1441(a).

[6] *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d at 366.

[7] *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d at 365.

[8] *St. Paul Reinsur. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

exists.[9]

The plaintiff does not seek relief under the OCSLA, nor does any citation to the OCSLA appear on the face of his complaint. Under the well-pleaded complaint rule, this typically would be sufficient to avoid original federal question jurisdiction. However, the Fifth Circuit has held that the well-pleaded complaint rule does not apply to removal under OCSLA.[10] Even though the plaintiff does not invoke the OCSLA, it is well-settled that 'because jurisdiction is invested in the district courts by [the OCSLA jurisdictional] statute '[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply.'"[11] Therefore, notwithstanding the fact that the plaintiff only seeks relief for his claims under the general maritime law, if OCSLA jurisdiction applies, an alternative basis of original subject matter jurisdiction exists and this general maritime claim may be removed notwithstanding the reference to the savings to suitors clause.[12] This is so because the savings to suitors clause "does no more than preserve the right of maritime suitors to pursue nonmaritime *remedies*. It does not guarantee them a nonfederal *forum*, or limit the right of defendants to

---

[9]   *DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

[10]   See *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir.1988)

[11]   *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014), *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).

[12]   *Barker v. Hercules,* 713 F.3d at 220.

remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty."[13]

## B. Outer Continental Shelf Lands Act Jurisdiction

As indicated in 43 U.S.C. §1349, OCSLA contains its own independent grant of original jurisdiction:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter.[14]

The Fifth Circuit has often recognized the broad grant of OCSLA jurisdiction.[15] To determine whether OCSLA jurisdiction is present, the Fifth Circuit applies a "but-for" two-pronged test asking whether: (1) the activities that caused the injury constituted an "operation" "conducted on the outer Continental Shelf" that involved the exploration and production of minerals, and (2) the case "arises out of, or in

---

[13] *Tennessee Gas Pipeline v. Houston Casualty Insurance, Co.* 87 F.3d 150, 153 (5th Cir. 1996). (Emphasis in original)

[14] 43 U.S.C. § 1349(b)(1).

[15] *Barker v. Hercules*, 713 F.3d at 213; *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006) amended on reh'g, 453 F.3d 652 (5th Cir. 2006); *In re Deepwater Horizon*, 745 F.3d at 163; *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d at 154; and *EP Operating Ltd. v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).

connection with" the "operation."[16]

The plaintiff argues that OCSLA jurisdiction does not exist because his alleged injury did not occur on an OCSLA situs as he contends the jack-up was floating in the water rather than attached to the seabed at the time of the allision. The defendant contests this assertion with the declaration by the captain that the jack-up still rested on the ocean floor at the time of the allision. The Court need not resolve this factual dispute at this juncture as the plaintiff's argument is inconsistent with this Court's own ruling which thoroughly examined OCSLA subject matter jurisdiction finding that there is no situs requirement when determining jurisdiction under § 1349(b).[17] The question is only whether the evidence submitted by the defendant in support of removal meets the two-prong "but for" test.

Utilizing the original petition, the plaintiff's affidavit and the declaration of the captain, the evidence establishes that the plaintiff's employer was hired by McMoran to perform certain tank cleaning operations in connection with one of their permanent production platforms located at Ship Shoal 58-A.[18]

---

[16] *In re Deepwater Horizon*, 745 F.3d at 163.

[17] See *Hammer v. PHI*, 2016 WL 7029354 (W.D. La. 2016) ("Given the plain language of the statute, the guidance of the Court in *Pacific Operators*, and consistent with *Deepwater Horizon*, this Court concludes there is no situs requirement in determining jurisdiction under § 1349(b).").

[18] Rec. Doc. 10-2, ¶ 2; 12-3, ¶ 4.

In *Recar v. CNG Producing,* [19] the court cited § 1331(m) of OCSLA, which defines "production" to include "activities which take place after the successful completion of any means for the removal of minerals, including . . .field operations . . .[and] maintenance," to encompass a claim by a foreman of a maintenance crew engaged in repairing and painting production platforms. Therefore, the tank cleaning operations performed by plaintiff and his co-employees, as a necessary maintenance item for the platform, constitute an "operation" on the OCS which involves the "production of minerals." This necessarily begs the question of whether the allision between the two vessels that caused the plaintiff's alleged injury is somehow different from the "operation" of the plaintiff's employment.

At the time of the accident, the plaintiff was a passenger aboard the L/B SUPERIOR RESULT, which was alongside McMoran's permanent production platform.[20] The L/B SUPERIOR RESULT jacked-down to receive equipment including cutting-boxes to complete the tank cleaning operations on the permanent production platform.[21] The M/V MISS ALLIE was transporting the cutting-boxes

---

[19]    853 F.3d 367, 369 (5th Cir. 1988).

[20]    Rec. Doc. 10-2, ¶ 6.

[21]    Rec. Doc. 10-2, ¶ 7.

when it crashed into the hull of the L/B SUPERIOR RESULT.[22]

In *Tennessee Gas,* a tow allided with a platform while the pilot of the tug was reading a novel instead of keeping a watchful eye on the tow. The court discounted the argument that the dispute arose out of a navigational error rather than an operation on the OCS and stated in pertinent part:

> In our case it is clear there would have been no accident but for Tennessee Gas's operation on the OCS. Tennessee Gas argues that the dispute "arose out of" a navigational error, and not an operation on the OCS. But there would have been no navigational error but for the existence of the platform and Tennessee Gas's extractive activities. Tennessee Gas also argues that the platform itself did nothing to cause the accident, so that the controversy is not connected with any physical act constituting an operation. This contention is meritless. The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS. Jurisdiction therefore exists under OCSLA.

*Tennessee Gas*, 87 F.3d at 155.

## **CONCLUSION**

The Court finds *Tennessee Gas* is dispositive. Based on the facts set forth in the plaintiff's affidavit, the declaration of Captain Batiste together with the Exhibits attached thereto, and the allegations in the plaintiff's petition, the allision between the L/B SUPERIOR RESULT and the M/V MISS ALLIE arises from, or in connection with, what is undisputably an operation conducted on the OCS involving the

---

[22] Rec. Doc. 10-2, ¶ 7.

production of minerals. The Court concludes that this case falls within the jurisdictional grant of OCSLA, and therefore, removal was proper regardless of whether the only claim for relief is brought under the general maritime law.

Accordingly, IT IS RECOMMENDED that the plaintiff's motion to remand [Rec. Doc. 10] be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 26th day of April 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE